UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

Robert Graham,                                                Case No. 5:11-cv-505

                      Petitioner,

v.                                                        **MEMORANDUM AND ORDER**

Florida Attorney General, and
Secretary, Florida Department
of Corrections,

                      Respondents.

---

This matter is before the Court on a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254. For the reasons that follow, the Petition is denied.

**BACKGROUND**

In 2006, Petitioner Robert Graham was charged with the following: (I) kidnapping with a firearm; (II) aggravated battery with great bodily harm; (III) aggravated battery with a deadly weapon; (IV) aggravated battery with a deadly weapon; (V) aggravated assault with a firearm; (VI) battery; and (VII) criminal mischief. After trial by jury, he was convicted on all but Count III. Graham was sentenced on February 25, 2008, to life imprisonment on Count I, 15 years on Counts II and IV, 5 years on Count V, and 365 days on Counts VI and VII. (App. A at 204–218).

On December 16, 2006, Deputy Robert Youmans responded to a call from Munroe Regional Hospital. (Mem. in Supp. of Am. Pet. (Docket No. 8) at 1.) On arrival, he met

with Allen Miller, who had burns on his hand and lumps on his head. (Id.; Resp. to Pet. (Docket No. 10) at 2.) Additionally, Miller smelled of urine and bleach and had bleach stains on his pants. (Id.) Following his discussion with Miller, Deputy Youmans went to a residence where he found dried blood and burnt skin on the stove. (Id.) He took DNA swabs, which were later found to be Miller's. (Id.) After inspecting the trailer, Deputy Youmans spoke with a witness, Tabitha Taylor, who told Deputy Youmans that Graham was responsible for Miller's injuries. (Mem. in Supp. of Am. Pet. (Docket No. 8) at 2.) Another witness implicated Divincey Wright in the attack on Miller. (Id. at 3.) Wright was also charged in the crime. (Id.)

Graham appealed his conviction and sentence. On appeal, he argued that his Sixth Amendment right to confrontation was violated, that the prosecutor improperly bolstered the credibility of the State's chief witness, and that he received ineffective assistance of counsel. (App. D.) The Florida Fifth District Court of Appeal affirmed per curiam. Graham v. State, 996 So. 2d 866 (table) (Fla. Dist. Ct. App. 2008).

Graham then filed a motion to mitigate his sentence under Florida Rule of Criminal Procedure 3.800(c), contending that the State's pre-trial plea offers, the disproportionate sentencing between he and his co-defendant, his good behavior during incarceration, and the victim's role as an instigator in the incident dictated a reduced sentence. (App. I.) The court denied the petition in March 2009. Graham then filed for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850. In his Rule 3.850 motion, Graham contended that trial counsel was ineffective for failing to raise appropriate confrontation clause objections, failing to object to prejudicial comments by

2

the prosecutor during opening statements, and failing to impeach a witness for prior inconsistent statements. The trial court denied Graham's claims, and the Fifth District Court of Appeal affirmed per curiam. Graham v. State, 64 So. 3d 1278 (table) (Fla. Dist. Ct. App. 2011).

The instant Petition was filed in August 2011, with an Amended Petition filed in September 2011. The Amended Petition raises five grounds for relief. In the first three grounds, Graham claims ineffective assistance of counsel arising out of his attorney's failure to object to testimonial hearsay of the victim, his attorney's failure to object to improper and prejudicial comments by the prosecutor during opening statements, and his attorney's failure to impeach witness testimony with prior inconsistent statements. (Am. Pet. (Docket No. 7) at 6–9.) The fourth ground claims that Graham was denied a fair trial due to the admission of hearsay evidence. (Id. at 11.) Finally, Graham contends that he was deprived of his constitutional right to a fair trial because the prosecutor improperly bolstered a witness's credibility. (Id. at 12.)

**DISCUSSION**

**A.     Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2241 et seq., a federal court's "review is greatly circumscribed and is highly deferential to the state courts." Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002). Indeed, AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S.

3

685, 693 (2002) (citation omitted). 28 U.S.C. § 2254, which applies to persons in custody pursuant to a state-court judgment, provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, § 2254 states that "a determination of a factual issue made by a State court shall be presumed to be correct." Id. § 2254(e)(1). The burden is on the Petitioner to "rebut[] the presumption of correctness by clear and convincing evidence." Id.

The habeas statute also requires that a petition submitted by a person in custody pursuant to a state conviction be filed in federal court within one year from the date the conviction became final, 28 U.S.C. § 2244(d), and that a habeas petitioner exhaust his available state court remedies prior to raising them in a federal habeas petition.[1] 28 U.S.C. § 2254(b)(1)(A). Generally, claims alleging a violation of state law are not subject to review in federal habeas proceedings. Pulley v. Harris, 465 U.S. 37, 41 (1984); McCullough v. Singletary, 967 F.2d 530, 535-36 (11th Cir. 1992).

---

[1] The parties agree that the petition is timely and that Graham exhausted his state-court remedies.

4

**B.     Evidentiary Hearing**

AEDPA dictates that a court shall not grant an evidentiary hearing unless Petitioner show that his claim "relies on a new rule of constitutional law . . . or a factual predicate that could not have been previously discovered through the exercise of due diligence" and that "the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for the constitutional error, no reasonable factfinder would have found the [petitioner] guilty . . . ." 28 U.S.C. § 2254(e)(2).

Graham received an evidentiary hearing on his Rule 3.850 motion on February 10, 2010. (App. L at 78.) The Government argues, and the Court agrees, that Graham is not entitled to a new evidentiary hearing, as all pertinent facts were fully developed during the 2010 hearing. (Resp. to Pet. (Docket No. 10) at 9–10.) Any decision on ineffective-assistance-of-counsel claims can be made from these facts.

**C.     Ineffective Assistance of Counsel**

Grounds One, Two, and Three claim that Graham was deprived of his constitutional right to effective assistance of counsel. (Am. Pet. at 6–9.) Graham can succeed on his claims only by showing that the trial court's or appellate court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law . . . ;" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). Therefore, he must establish not only that his counsel was ineffective, but also that the state courts acted unreasonably in reviewing his claims.

5

### 1. Failure to Properly Raise Confrontation Clause Objections

Graham contends that his trial attorney should have objected to the following various statements made by the prosecutor and certain witnesses:

1. During opening statements, the prosecutor told the jury that Miller "described to the people at the hospital or the nurse practitioner who took care of him, that he had been beaten with a piece of wood, with a gun and that . . . he had been forced to place his hand on a hot burner of a stove for long enough to do damage that had been done."

2. During opening statements, the prosecutor stated that Miller "described to [Deputy Youmans] a way of getting there [to Graham's trailer]. So Deputy Youmans followed those, went to a trailer."

3. Nurse practitioner David Companion testified that Allen Miller told him that he was assaulted, struck with a board and a gun, and that his hand was burned on an electric stove.

4. Taylor testified that she heard Miller saying "no, please, stop."

5. Taylor testified that Miller told her that Graham was the person who burned Miller's hand on the stove.

(App. L at 3.) Graham argues that his trial counsel's failure to object to these statements was unreasonable and constituted ineffective assistance of counsel. Graham further argues that had trial counsel properly objected, there is a substantial likelihood that he would have been acquitted.

The first four statements were found to be admissible by the trial court: "[a]ny objection defendant's trial counsel might have made in connection with these first four statements would have been overruled because the statements are not inadmissible." (Final Order Den. Mot. Post Conviction Relief at 8.) Thus, any objection by trial counsel

6

would have been futile.  On this basis alone, Graham's claim regarding these statements is without merit.

As for the last statement, it was in fact objected to by trial counsel.  (App. B at 150–151.)  After sustaining the objection, the court advised the jury to disregard the statement as inadmissible hearsay.  Id.  Trial counsel agreed that the jury instruction surrounding the inadmissibility of this statement was satisfactory.  (Id. at 151.)  The standing presumption is that jurors follow instructions.  Penry v. Johnson, 532 U.S. 782, 799 (2001); Richardson v. Marsh, 481 U.S. 200, 206 (1987); Francis v. Franklin, 471 U.S. 307, 324, n.9 (1985).  There is no evidence to the contrary in the record.  Therefore, Graham has not established that his trial counsel was ineffective in this regard.

### 2. Failure to Object During Prosecutor's Opening Statements

Graham also contends that he was denied the right to effective assistance of counsel because his attorney failed to object to the prosecutor's prejudicial or improper comments during opening statements.  Graham points to three statements made by the prosecutor in support of his claim:  telling the jury that Miller described the location of Graham's trailer to Deputy Youmans, commenting on Graham's right to remain silent, and making misstatements to the jury that Graham had lain in wait for the victim.  (Mem. in Supp. of Am. Pet. (Docket No. 8) at 30–33.)

Graham's claim based on Deputy Youmans's statement is addressed above and will not be addressed further.  Graham's second basis requires more discussion, but is equally unavailing.  The prosecutor addressed what happened after Graham was read his Miranda rights.  Graham contends that the prosecutor commented on his right to remain

7

silent by saying: "Deputy Youmans says, do you know what this is about and [Mr. Graham] says, this is about that thieving ass that stole from me, isn't it. And then he-- that's all he says." Even if this statement amounts to a comment on Graham's invocation of his right to remain silent, trial counsel's failure to object was harmless.

Graham must show that his counsel acted in such a way as to be "outside the broad range of reasonably competent performance" and that the "substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined." Maxwell v. Wainwright, 490 So. 2d 927, 932 (Fla. 1986) (citing Strickland v. Washington, 466 U.S. 668 (1984)). The Court finds that this single, isolated statement could not have undermined the probability of the verdict, especially when the jury was very clearly instructed that any statements made by the lawyers during opening statements were not to be considered as evidence. (App. Ex. B at 23.)

Graham's last contention is that the prosecutor misstated facts to the jury, which may have led the jury to believe that "Graham had laid in wait for Mr. Miller at the trailer with the intent of assaulting Miller." (Mem. in Supp. of Am. Pet. at 33.) This statement was made during opening statements and was later undermined by testimony elicited during trial. The State argues, and the Court agrees, that whether Graham waited for Miller is inconsequential because it is undisputed that Graham caused Miller's injuries. (Resp. to Pet. at 25.) Under these circumstances, trial counsel's failure to object during opening statements was not tantamount to ineffective assistance of counsel.

### 3. Failure to Impeach Witness Testimony with Prior Inconsistent Statements

Graham alleges that his trial counsel erred in failing to impeach witness Tabitha Taylor after she made sixteen inconsistent statements during the course of the trial. Counsel is not deemed ineffective merely because another lawyer would have made a different strategic choice. Strickland, 466 U.S. at 689. Strategic choices regarding lines of defense are given deference so long they are based on reasonable professional judgments at the time of trial. Id. at 681. Ultimately, these decisions do not constitute deficient performance if they were based on strategy and were reasonable in the circumstances. Here, there is no evidence that trial counsel's strategy regarding Taylor fell below professional standards.

Graham's trial counsel testified at the evidentiary hearing that he made the tactical decision not to impeach Taylor because doing so fit into the theory of the case—that DaVinci Wright was the main perpetrator. (App. L at 100.) Counsel's theory hinged on the notion that Wright acted independently of Graham, and Taylor was the only witness who could bolster this theory. (Id. at 104.) Graham was aware of this strategy. (Id. at 100, 119.)

The trial court concluded that trial counsel's strategy was sound: "Perhaps defendant's postconviction counsel would have tried the defendant's case differently, and perhaps he would have done more to impeach Tabitha Taylor. Perhaps five other criminal defense attorneys would have had five different trial strategies. That does not make any one of them ineffective under Strickland and Singletary." (Id. at 171.) The

9

Court agrees that trial counsel's reasonable strategic decision not to impeach Taylor does not constitute ineffective assistance of counsel under Strickland.

D.    **Evidence Admitted in Violation of Sixth Amendment**

Graham next contends that he was denied his constitutional right to a fair trial when the trial court admitted hearsay evidence in violation of the Sixth Amendment. This claim is reiterative in nature. Graham concedes as much, urging the Court to rely on the arguments and citations of authority from Grounds One and Two. (Pet'rs Reply Br. (Docket No. 12) at 13.) The Court will not revisit the issue.

E.    **Prosecutor's Improper Bolstering of the State's Chief Witness.**

Lastly, Graham contends that he was deprived of a fair trial when the prosecutor improperly bolstered Taylor's credibility. Improper bolstering occurs when "the State places the prestige of the government behind the witness or indicates that information not presented to the jury supports the witness's testimony." Hutchinson v. State, 882 So. 2d 943, 953 (Fla. 2004).

The prosecutor had leeway to deliver a closing argument that reviewed the evidence so that the jury could "explicate those inferences which may reasonably be drawn from the evidence." Bertolotti v. State, 476 So. 2d 130, 134 (Fla. 1985). The prosecutor may "argue reasonable inferences from the evidence and . . . credibility of witnesses or any other relevant issue so long as the argument is based on the evidence." Miller v. State, 926 So. 2d 1243, 1254–55 (Fla. 2006).

During closing arguments, the prosecutor stated that Taylor's testimony had been "consistent throughout." (App. B at 238.) Defense counsel objected, arguing that it was

improper to bolster Taylor's credibility and suggested that curative instructions be given to the jury. (Id. at 238–240.) Counsel agreed to the following instructions be given to the jury: "Ladies and gentlemen, Ms. Nixon is entitled to comment about the consistency of the evidence in this case. I would remind you that you must rely upon your own recollection of what the evidence in this case was." (Id. at 244.)

Graham contends that this instruction violated his due process rights, arguing that "Taylor's prior statements to law enforcement and her deposition were never introduced at trial, [so] the court's instruction that the jury 'rely upon [their] own recollection of what the evidence in the case was' was wholly inadequate." (Mem. in Supp. of Am. Pet. at 58.) The instruction could reasonably be interpreted as a reminder to reference all corroborative evidence adduced during the trial. And because Taylor's testimony was consistent with other evidence presented at trial, Graham has not established that he was denied a fair trial on this basis.

### F.   Certificate of Appealability

Graham is required to secure a Certificate of Appealability before appealing the dismissal of his habeas corpus action. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). This Court cannot grant a Certificate of Appealability unless the prisoner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003). The prisoner must

11

establish that the resolution of his constitutional claims "was debatable among jurists of reason." Lott v. Att'y Gen., Fla., 594 F.3d 1296, 1301 (11th Cir. 2010).

Graham has not demonstrated that his claims are debatable or that they "deserve encouragement to proceed further." Miller-El, 537 U.S. at 327. The Court will therefore not grant a Certificate of Appealability on any of Graham's claims.

**CONCLUSION**

Graham has not established that any errors of constitutional magnitude have occurred in state-court proceedings. Accordingly, **IT IS HEREBY ORDERED** that:

1. The Amended Petition for Writ of Habeas Corpus (Docket No. 7) is **DENIED**; and

2. A Certificate of Appealability will **NOT** issue.

The Clerk shall enter judgment accordingly, terminate all remaining deadlines as moot, and close the file.

Dated: May 20, 2014                    *Paul A. Magnuson*
                                       Paul A. Magnuson
                                       United States District Court Judge